IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| RENATA LUISA SILVA PISCETTA, § <br> O'KEEFE, et al., § <br> § <br>     Plaintiffs, § <br> § <br> v. § <br> § <br> NOBLE DRILLING CORPORATION, § <br> et al., § <br> § <br>     Defendants. § | CIVIL ACTION NO. G-06-CV-688 |

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

    This case involves the death of an Australian national working in Brazil ("O'Keefe" or "Decedent") who died after receiving allegedly inadequate medical treatment for a respiratory incident. O'Keefe was working as a driller on the semi-submersible rig, *Noble Paul Wolff*. Plaintiffs are O'Keefe's wife, Renata Luisa Silva Piscetta O'Keefe, O'Keefe's daughter Isabelle, O'Keefe's parents and O'Keefe's sister. Plaintiffs have sued Noble Drilling Corporation and several Noble entities (collectively "Noble"), including Noble do Brasil Ltda. ("Noble do Brasil") and Noble Drilling (Paul Wolff) Ltd. ("Paul Wolff"). Now before the Court are Motions to Dismiss based on *forum non conveniens* and lack of personal jurisdiction filed by Defendants Noble do Brasil and Paul Wolff. For the reasons outlined below, Defendants' Motions to Dismiss are **DENIED**.[1]

**I. Background**

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

In July, 2003, O'Keefe was working as a directional driller off the coast of Brazil aboard the *Noble Paul Wolff*, a semisubmersible drilling rig. O'Keefe was married to Plaintiff and had a daughter. At the time of his death, O'Keefe, an Australian national, was living with his family in Brazil. On July 10, 2003, O'Keefe reported to the rig infirmary complaining of a sore throat. Though there was an allegedly qualified doctor aboard the rig, O'Keefe suffocated and went into cardiac arrest. Plaintiffs argue that O'Keefe died because he did not receive adequate medical care.

The *Noble Paul Wolff* was under the Panamanian flag at the time of O'Keefe's death. It is owned and operated by Paul Wolff, a corporation registered in the Cayman Islands. Noble do Brasil, a Brazilian corporation, provided the drilling crew. Noble Corporation is the ultimate parent company of both Paul Wolff and Noble do Brasil. Noble Corporation is headquartered in Sugar Land, Texas.

## II. Motion to Dismiss for *Forum Non Conveniens*

### A. Legal Standard

The doctrine of *forum non conveniens* derives from the proposition that "[i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 766, 116 S. Ct. 1712, 1724, 135 L. Ed. 2d 1 (1996). Pursuant to this doctrine, a court may dismiss a case in favor of a foreign forum if the defendant establishes that the convenience of the parties and the court, coupled with the interests of justice, indicate that the lawsuit is better suited for adjudication elsewhere. *See Karim v. Finch Shipping Co.*, 265 F.3d 258, 268 (5th Cir. 2001).

Federal courts employ a two-part analysis when applying the *forum non conveniens* doctrine in the international context. *See Piper Aircraft v. Reyno*, 454 U.S. 235, 255-56, 102 S. Ct. 252, 265-66, 70 L. Ed. 2d 419 (1981). The first step involves a determination of whether an adequate and available foreign forum exists. *See Sydow v. Acheson & Co.*, 81 F. Supp. 2d 758, 768 (S.D. Tex. 2000). Next, if an adequate alternative forum is available, the court must decide whether "certain private and public interest factors weigh in favor of dismissal." *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001). If the relevant private interest factors advocate dismissal, however, no inquiry into the public interest factors is needed. *See Baris v. Sulpicio Lines*, 932 F.2d 1540, 1550-51 (5th Cir. 2001). While undertaking both steps of this analysis, courts must remain mindful that "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft*, 454 U.S. at 256, 102 S. Ct. at 266; *see also Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986).

The private factors to be considered in a *forum non conveniens* analysis relate to the convenience of the parties, and include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if such viewing would appropriate to the action; other practical problems that make a trial of a case easy, expeditions, and inexpensive; the enforceability of the judgment; and whether the plaintiff has sought to vex, harass, or oppress the defendant. *See Karim*, 265 F.3d at 268 n.14 (citations omitted). The "public interest" factors include: administrative difficulties; reasonableness of imposing jury duty on the people of the community;

3

holding trial in the view of those affected; and the local interest in having localized controversies decided at home.  *See id.*

### B. Analysis

#### 1. *Available and Adequate Forum*

Defendants argue that Brazil presents an available and adequate alternative forum for the adjudication of this dispute.  An alternative forum is available to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be dismissed.  *See Piper*, 454 U.S. at 254 n.22, 102 S. Ct. at 265 n.22 (citation omitted) ("Ordinarily, [the requirement] will be satisfied when the defendant is amenable to process in the other jurisdiction.")  The alternative forum is adequate as long as the parties will be treated fairly and will not be deprived of all remedies there.  *See Sydow*, 81 F. Supp. 2d at 768; s*ee also Piper*, 454 U.S. at 254 n.22, 102 S. Ct. at 265 n.22.

The Parties strenuously disagree whether Brazil is an available forum for this dispute.  Based on testimony from a Brazilian lawyer, Ivan Tauil Rodrigues, Defendants argue that "the plaintiffs in this case may bring an action in civil courts of Brazil and the Brazilian courts may also award actual damages that are established by proven financial loss as well as moral damages."  Defs.' Mot. to Dismiss, Ex. G at 3.  Mr. Rodrigues further opines that "according to article 88, III of the Brazilian Civil Procedure Code, the Brazilian Jurisdiction may award any case that was originated by an act performed or occurred in Brazil."  *Id.*  Mr. Rodrigues argues that this particular case is one which would fall under the jurisdiction allowed by article 88, III of the Brazilian Code of Civil Procedure.

Plaintiffs offer an affidavit from another Brazilian attorney, Antonio De Arruda Sampaio, who states:

> As noted by Dr. Rodrigues, article 88, III of the Brazilian Code of Civil Procedure creates jurisdiction over claims that originate out of an act that was performed in, or that occur <u>in Brazil</u>, Brazilian jurisdiction will attach. However, in this case, Mr. O'Keefe's death did NOT occur in Brazil, but instead aboard a drilling vessel, the *Noble Paul Wolff*, that was under the Panamanian flag at the time of the death. Under Brazilian law, a foreign-flag vessel is deemed foreign territory, in accordance with the principle of Institutionality. . . Because this claim did not arise in the Brazilian territory but rather on a foreign-flag vessel, article 94 of the Brazilian Code of Civil Procedure applies and mandates that proper jurisdiction attaches in the Court of the Defendant's domicile; that is, the domicile of the vessel owner.

Pls.' Resp., Ex. 1 at 3.

The Parties have presented equally credible expert testimony. However, Defendants bear the burden of persuasion in a *forum non conveniens* analysis. *See In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1162 (5th Cir. 1989) (en banc), *vacated by Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S. Ct. 1928, 104 L. Ed. 2d 400 (1989), *reinstated except as to damages by Air Crash Disaster v. Pan Am. World Airways, Inc.*, 883 F.2d 17 (5th Cir. 1989) (en banc). In the face of equally credible but contradictory testimony, Defendants cannot be said to have met their burden. Since Defendants have failed to meet this burden, the Court must find that Brazil is not an available forum for this litigation.

Since Defendants have not carried their burden of showing the existence of an available foreign forum, their Motion to Dismiss for *Forum Non Conveniens* must be denied.

**III. Motion to Dismiss for Lack of Personal Jurisdiction**

    **A. Legal Standard**

Noble do Brasil and Paul Wolff have also moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Specifically, Defendants argue that this Court's exercise of jurisdiction over Noble do Brasil and Paul Wolff would violate the due process clause of the Fourteenth Amendment because they have insufficient contacts with the State of Texas.

As nonresidents of the State of Texas, Noble do Brasil and Paul Wolff are subject to personal jurisdiction in this District if they are amenable to service of process under Texas's long-arm statute and the exercise of personal jurisdiction is consistent with due process. *See Stripling v. Jordan Prod. Co., L.L.C.*, 234 F.3d 863, 869 (5th Cir. 2000); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). Since the Texas long-arm statute reaches as far as the Constitution allows, there is a single inquiry into whether jurisdiction over Noble do Brasil and Paul Wolff is consistent with the Due Process Clause of the United States Constitution. *See Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

Whether the exercise of personal jurisdiction over a defendants is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that the defendant has "minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). Second, the Court must determine that requiring the defendant to litigate in this forum does not offend "traditional notions of fair play and substantial

justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994); *Ruston Gas Turbines*, 9 F.3d at 418.

The "minimum contacts" prong can be satisfied by finding either general or specific jurisdiction over a defendant. *See Wilson*, 20 F.3d at 647. A defendant's contacts unrelated to the cause of action may confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial." *Id.* At 647, 650-51. A defendant's limited contact with the forum state may support specific jurisdiction if such contacts give rise to the cause of action. *See Ruston Gas Turbines*, 9 F.3d at 419 ("A single act by the defendant directed at the forum state, therefore can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). Specific jurisdiction is proper if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. 2d 1283 (1958)). A defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum stat "such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 474, 105 S. Ct. at 2183 (citing *World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 490 (1980)).

Generally, the plaintiff bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *See Wilson*, 20 F.3d at 648. However, it is sufficient for the plaintiff to make a prima facie showing of jurisdiction, and any conflicts between affidavits are resolved in favor of the plaintiff. *See Asarco, Inc. v. Glenara, Ltd.*, 912

F.2d 784, 785 (5th Cir. 1990); *Guyton v. Pronav Ship Mgmt., Inc.,* 139 F. Supp. 2d 815, 818 (S.D. Tex. 2001).[2]

### B. Analysis

Paul Wolff, a Cayman Islands limited partnership, is the registered owner of the drilling rig *Noble Paul Wolff*. Paul Wolff is 100% owned by Noble Drilling Holding LLC, a Delaware Company and subsidiary of Noble Corporation. Paul Wolff is a holding company whose main asset is the *Noble Paul Wolff*. However, the disposition of the vessel is ultimately controlled by Noble's Sugar Land-based headquarters. Paul Wolff has three employees, none of whom actually live or work in the Cayman Islands. Paul Wolff's essential administrative functions, such as payroll, are performed by other Noble entities including Noble Drilling Services, Inc. and Noble International Ltd. Since Paul Wolff's everyday operations are controlled by Noble entities based in Sugar Land, and the disposition of its only asset is subject to the decisionmakers at Noble's Sugar Land headquarters, Paul Wolff has contacts with Texas that rise to the level of "continuous and systematic" and "substantial." The Court finds that Paul Wolff's Cayman Islands incorporation is merely a matter of business organization and that Paul Wolff is substantially controlled from Texas. These operations are sufficient for Paul Wolff to expect to be haled into a Texas Court to face litigation, and the practicalities of Noble's operations are such that maintaining the action here does not offend traditional

---

[2] Plaintiffs initially argue that Federal Rule of Civil Procedure 4(k)(2) allows for personal jurisdiction over Noble do Brasil and Paul Wolff. Rule 4(k)(2) allows for personal jurisdiction over admiralty defendants in any district court where the defendant has contacts with the United States as a whole sufficient to justify exercising jurisdiction over it. In this case, the Court finds that it has jurisdiction over Noble do Brasil and Paul Wolff pursuant to traditional jurisdictional analysis, so it is unnecessary to analyze this case pursuant to Rule 4(k)(2). In any event, all of the contacts Plaintiffs cite in support of jurisdiction are directed specifically at Texas, so it is unnecessary to a broaden the analysis to Defendants' nationwide contacts.

notions of fair play and substantial justice.[3]  Accordingly, the Court finds that it has personal jurisdiction over Paul Wolff.

Noble do Brasil, the operator of the *Paul Wolff*, is a Brazilian company with between 400 and 500 employees.  Plaintiffs argue that it operates so closely with the Sugar Land-headquartered Noble entities that it constitutes a single business enterprise for jurisdictional purposes.  The Court is persuaded by this argument since testimony taken in the light most favorable to Plaintiffs indicates that the operations of Noble do Brasil are controlled from Sugar Land through weekly operational meetings which specifically include discussions regarding safety aboard the *Paul Wolff*.  In fact, Noble do Brasil's health and safety manager at the time of O'Keefe's death was actually an employee of Noble International.  Based on the evidence presented, it is highly unlikely that Noble do Brasil will be burdened by having to defend itself in a foreign forum—especially when several other Noble entities have already submitted to the Court's jurisdiction.  These facts, taken together, are sufficient to provide jurisdiction over Noble do Brasil.

**IV. Conclusion**

For the reasons outlined above, Defendants' Motions to Dismiss are **DENIED**.  All Parties are to bear their own costs, expenses and attorneys' fees incurred herein to date.

---

[3] The Court notes that Paul Wolff has previously faced litigation in this Court, which should further bolster its expectations of being haled into this Court.  *See Middleton v. Noble Drilling Corp.*, 89 F. Supp. 2d 874 (S.D. Tex. 2000).

**IT IS SO ORDERED.**

**DONE** this 27th day of February, 2007 at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge