UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RENATA LUISA SILVA PISCETTA O'KEEFE, *et al*, | } } } | |
| Plaintiffs, | } | |
| VS. | } | CIVIL ACTION NO. G-05-688 |
| | } | |
| NOBLE DRILLING CORPORATION D/B/A NOBLE DRILLING SERVICES INC., *et al*, | } } } | |
| Defendants. | } | |

## ORDER GRANTING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

Pending before the court in this wrongful death action is Third-Party Defendant Schlumberger Limited's Motion to Dismiss for *Forum Non Conveniens* (Doc. No. 154), which is unopposed by the Noble Defendants/Third-Party Plaintiffs but opposed by Plaintiffs. For the reasons outlined below, the Motion is **GRANTED**, and this case is **DISMISSED**.

### I. BACKGROUND & RELEVANT FACTS

The factual background of this case has been laid out several times by both this court and its predecessor court. This is essentially a wrongful death case brought by the estate and family of an Australian national ("O'Keefe") who died while working as a directional driller off the coast of Brazil. O'Keefe was working aboard the *Noble Paul Wolff*, a semisubmersible drilling rig owned and operated by Paul Wolff, a subsidiary of the Noble Corporation ("Noble"). Noble and several of its affiliated Brazilian corporations are defendants in this case, which alleges that O'Keefe died after receiving inadequate medical care aboard the rig.

Noble has brought third-party claims against Schlumberger Limited ("Schlumberger"), the parent company of O'Keefe's employer, Schlumberger Servicos de

Petroleo Ltda. ("Servicios").  It is Schlumberger's Motion to Dismiss that is now before the Court.  In February, 2007, the predecessor court in this case denied a Motion to Dismiss for *Forum Non Conveniens* filed by the Noble entities.  The court's findings were based on a determination that both parties had presented equally credible expert testimony, so Plaintiffs' choice of forum should not be upset.  Schlumberger's current motion is very similar to the motion previously submitted by Noble.  However, given the events in this lawsuit since it was transferred to this court as well as information that was either not presented to, not considered by, or otherwise not available to the predecessor court, it is the opinion of this court that the case should now be dismissed in favor of a more appropriate forum.

## II. DISCUSSION

Under the doctrine of *forum non conveniens*, "a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum."  See *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993) (citing *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1155 (5th Cir. 1987)).  "A court's authority to effect foreign transfers through the doctrine of *forum non conveniens* 'derives from the court's inherent power, under Article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression.'"  *Id*.  A district court's discretion to grant or deny a motion to dismiss on the basis of *forum non conveniens* is reviewed only for clear abuse of discretion.  *Id.* at 835 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981); *In re Air Crash Disaster*, 821 F.2d at 1147).

A *forum non conveniens* analysis is a multi-step inquiry. First, the court must determine whether an adequate alternative forum is available to the litigants. *Piper Aircraft*, 454 U.S. at 254 n. 22; *Baumgart*, 981 F.2d at 835. Second, if answering the first question in the affirmative, the court must determine which forum is more appropriate by balancing a number of private and public interest factors weighing in favor of and against dismissal. *Mclennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001) ("If the moving party carries its burden of establishing an alternate forum that is both adequate and available, then the defendant is charged with showing that dismissal is warranted because certain private and public interest factors weigh in favor of dismissal."). "'[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the interests of justice.'" *In re Air Crash*, 821 F.2d at 1162 (quoting *Koster v. Am. Lumbermans Mutual Casualty Co.*, 330 U.S. 518, 527, 67 S. Ct. 828, 91 L. Ed. 1067 (1947)).

The onus is on the defendant to prove all of the elements of *forum non conveniens*. *Id.* at 1164. Generally, there is a strong presumption in favor of a plaintiff's choice of forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); *see also Dtex, LLC v. BBVA Bancomer, S.A.*, 512 F. Supp. 2d 1012, 1020 (S.D. Tex. 2007), *aff'd*, No. 07-20364, 2007 WL 4126801 (5th Cir. Nov. 21, 2007). Nevertheless, the plaintiff's choice of forum is not conclusive, and, more importantly under the facts of this case, "a foreign plaintiff's selection of an American forum is entitled to less deference than an American's selection of his home forum." *In re Air Crash*, 821 F.2d at 1164 (citing *Piper Aircraft*, 454 U.S. at 254-55).

### A. Whether Brazil is an Available and Adequate Forum

An alternative forum is available when the entire case and all of the parties can come within the jurisdiction of that forum. *In re Air Crash Disaster*, 821 F.2d at 1165; *Baumgart*, 981 F.2d at 835. An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. *In re Air Crash Disaster*, 821 F.2d at 1165 (citing *Piper Aircraft*, 454 U.S. at 253); *Baumgart*, 981 F.2d at 835.

Brazil is an adequate forum for this litigation. All Parties seem to agree that there is a remedy for personal injury and wrongful death in the Brazilian courts. However, Plaintiffs argue that Brazil is inadequate because "its courts are congested and lack the tools to compel extraterritorial discovery or testimony." *See* Doc. 35 at 11. The Court is not convinced by this argument. First, the affidavit of Plaintiffs' expert states that this case would take four years to resolve at the trial court level. *See* Doc. 35, Ex. 1 at 3. This is not an unacceptable level of delay. In fact, this case has already been pending here for two-and-half years, and is apparently still not ready for trial. Though a four-year trial track is slower that the average in the Southern District of Texas, it is not so unreasonable as to make Brazil an inadequate forum.[1]

Plaintiffs' concern regarding the inability of a Brazilian court to compel extraterritorial discovery or testimony is also unpersuasive. First, this court is equally unequipped to compel testimony from nonparty witnesses located in Brazil, something that is far more likely to be a problem in this case. This litigation has repeatedly been delayed because of the inability of the parties to procure and provide discovery located in Brazil. Since this accident occurred in Brazil, and the corporate entities with actual involvement in this case are all Brazil-

---

[1] Perhaps some of the inevitable delay will be avoided, since a case based on these same facts and involving these parties has been pending in the Brazilian court for quite some time.

4

based corporations, the inability of Brazilian courts to compel extraterritorial discovery seems inconsequential. This position is strengthened by the fact that most witnesses located in the United States are party witnesses whose compulsion will not be required.

Brazil is also an available forum for this litigation. Schlumberger argues that this entire case and all relevant parties can be brought before the Brazilian court. Noble and Schlumberger have provided affidavits from competent and convincing Brazilian attorneys stating that this case would be heard by a Brazilian court. *See* Doc. 31, Ex. 2. Moreover, the defendants now before this court will submit to the jurisdiction of the Brazilian courts. Plaintiffs argue that Brazilian courts are not in fact available for this litigation since O'Keefe died on a Panamanian-flagged vessel. *See* Doc. 35, Ex. 1 at 3. Plaintiffs' expert states that the Brazilian courts will deem his death to have occurred in Panama. *Id.* He then states that a Brazilian court would find that jurisdiction over a lawsuit arising out of events which occurred on a foreign-flagged vessel located in Brazilian waters would be proper in the domicile of the defendant. *Id.*

Schlumberger Limited, the party now before the court, is headquartered in Texas. However, Schlumberger Servicios Petroleo Ltda. ("Servicios"), a former party to this case is a Brazilian-based corporation. Servicios was O'Keefe's employer, and is the Schlumberger entity which should most appropriately be involved in this case. Plaintiffs' claims against Servicios were voluntarily dismissed very early in the litigation. *See* Doc. 21. Noble's claims against Servicios were dismissed from the lawsuit due to improper service. *See* Doc. 148. Even if the claims against Servicios had survived the court's May 14, 2008 Order, it is unlikely that this court could have exercised personal jurisdiction over it. There has been no argument that Servicios could not be appropriately brought before a Brazilian court.

Additionally, Noble Drilling (Paul Wolff) Ltd., the owner of the vessel aboard which O'Keefe was working, is organized under the laws of the Cayman Islands and conducts business in Brazil. No expert has presented testimony regarding how Brazilian courts determine the domicile of corporations, but it is likely that Noble Drilling (Paul Wolff) Ltd. would be considered a Brazilian domiciliary. According to Plaintiffs' own experts, this would support the exercise of jurisdiction over this case by a Brazilian court, even if the accident is deemed to have occurred in Panama.

The Texas-based Schlumberger and Noble entities are not the parties most closely involved in the facts of this case. Rather, claims have been asserted against them based on alter ego liability, a theory that seems to exist under Brazilian law.[2] *See* Doc. 160. The court finds it likely that if the Brazilian courts will impose liability based on alter ego-type claims, they can also exercise jurisdiction on the basis of an alter ego-type theory, much as courts in this District could. Accordingly, the court finds that since the most directly involved parties can definitely be brought before the Brazilian courts, and the parent corporations can likely be brought before them, Brazil is an available forum. This finding is bolstered by the fact that the defendants and third-party defendants have agreed to a lawsuit in Brazil.

Having determined that Brazil is an available and adequate forum, the court will now turn to its analysis of the private and public interest factors.

### B. Whether the Private Interest Factors Weigh in Favor of Dismissal

The private interest factors relevant to a *forum non conveniens* analysis are: (1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility

---

[2] The court is not equipped to determine whether the doctrine will ultimately apply in this case. It only notes that the theory is theoretically available for application.

of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive. *See Gulf Oil*, 330 U.S. at 506-07.[3]

### 1. Ease of Access to Sources of Proof

This factor strongly favors dismissal of this case. All of the activities underlying this lawsuit took place in Brazil. At the request of the parties, this court has already issued a Request for International Judicial Assistance to assist in compelling the production of relevant witnesses and documents located in Brazil. Gaining access to this proof has already proven to be very difficult as evidenced by the endless delay and discovery disputes precipitated by the parties' desire to seek evidence located in Brazil or held by Brazilian domiciliaries.

Plaintiffs have listed several witnesses who reside in or near this District. However, nearly all of those witnesses are Noble employees. Since Noble is consenting to jurisdiction in Brazil, it should not be a problem to bring those witnesses before a Brazilian court. Any non-party witnesses are more likely to reside in Brazil than in the United States, since that is where O'Keefe's death occurred.

Plaintiffs have also noted that their expert economist is a resident of this District. That weighs very little in the court's analysis since he was retained by Plaintiffs after this litigation had begun. The court has no doubt that Plaintiffs will be able to find a Brazilian economist or will be able to tender the report of their current economist to the Brazilian court.

---

[3] The court has also considered whether the motion to dismiss has been timely submitted. *See Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 836 (5th Cir. 1993). Though this case has been pending for a relatively long time, Schlumberger's motion was originally filed in February, 2008. While this is roughly nine months after the Schlumberger entities were added to the case, the court finds that it is nonetheless timely. Much of that time was taken up by delay caused by discovery disputes, motions for extensions of time, and disposition of other dispositive motions.

### 2. Availability of Compulsory Process for Unwilling Witnesses

This factor weighs in favor of dismissal, since most unwilling non-party witnesses are likely to reside in Brazil, beyond the reach of this court.

### 3. Costs of Obtaining Appearance of Willing Witnesses

This factor is roughly neutral. Plaintiff claims that several witnesses from Noble and Schlumberger headquarters will testify at trial. Obviously, sending a large number of witnesses to Brazil from this District will be expensive. Equally expensive however, will be bringing witnesses from Brazil to Houston.

### 4. Ability to View Premises

Though the vessel where O'Keefe worked is located in Brazil, it is unlikely that a visit is necessary to the resolution of this case. This factor is neutral in the *forum non conveniens* analysis.

### 5. Other Practical Problems

There are no other specific practical problems that have not already been discussed above. Overall, the private factors under consideration favor dismissal of this case in favor of a Brazilian forum.

### C. Whether the Public Interest Factors Weigh in Favor of Dismissal

The public interest factors in this case strongly favor dismissal. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having a trial in a forum that is familiar with the law that must govern the action; and (4) the avoidance of unnecessary problems in conflict of law, or in application of foreign law.[4] "The central question

---

[4] Typically the court would also consider the unfairness of burdening citizens in an unrelated forum with jury duty. Since this case will have a bench trial, that factor is irrelevant.

8

a court must answer when considering the public interest is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it." *Seguros Comercial Americas S.A. de C.V. v. Am. President Lines, Ltd.*, 993 F. Supp. 1301, 1313 (S.D. Tex. 1996).  In this case, the answer is no.  This is a case governed by Brazilian law regarding the death of an Australian citizen while working in Brazil for a Brazilian company.  Other than the headquarters of the parent companies of two involved parties, this case has no meaningful connection to this forum.

Having weighed both the public and private interest factors, the court finds that the vast majority weigh in favor of dismissing the case on the basis of *forum non conveniens*.  This dismissal is conditioned on all defendants submitting to the jurisdiction of the Brazilian court.

### III.  CONCLUSION

Accordingly, and for the aforementioned reasons, it is hereby

ORDERED that Defendants' Motion to Dismiss is GRANTED.

This case is DISMISSED on the basis of *forum non conveniens*.

SIGNED at Houston, Texas, this 13th day of August, 2008.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE